DECISION AND JOURNAL ENTRY
{¶ 1} Appellant Sharon Township Board of Trustees has appealed from a decision of the Medina County Court of Common Pleas that vacated a decision of the Sharon Township Board of Zoning Appeals, which found that Appellee Fred Crutchfield committed a zoning violation. This Court affirms.
 I {¶ 2} On August 4, 1998, a zoning inspector for Sharon Township issued a notice of a zoning violation for a property located at 2280 Ridgewood Road ("Property"). The owner of the Property, Appellee Fred Crutchfield ("Crutchfield"), owned a commercial hauling business that he operated out of the Property. Crutchfield's business employed independent operators, some of whom used the trucks owned by Crutchfield; Crutchfield also drove one of his semitrucks for his company. Crutchfield was ordered to discontinue use of the Property for his transportation business. Specifically, he was "enjoined and restrained from the operation of an independent transportation business, including but not limited to: dispatching vehicles; maintaining, storing, or servicing vehicles * * *." After receiving the citation, Crutchfield moved the business to a new location.
 {¶ 3} On April 11, 2002, Crutchfield received a second zoning violation. He appealed the second violation to the Board of Zoning Appeals of Sharon Township ("BZA"). On June 19, 2002, the BZA held a hearing on the matter and it upheld the violation finding that Crutchfield violated Sharon Township zoning regulations. On July 19, 2002, pursuant to R.C. 2506.01, Crutchfield appealed the decision of the BZA to the Medina County Court of Common Pleas. In his brief to the trial court, Crutchfield stated that his residence is the Property and that "he occasionally works on the trucks he owns in his garage."
 {¶ 4} On April 21, 2003, the trial court informed Appellant Sharon Township Board of Trustees ("Trustees") that the record was incomplete because exhibits and photographs that were submitted to the BZA were not in the file. The trial court reset the hearing for April 30, 2003 so that the entire record could be submitted to the court. On April 30, 2003, the Magistrate vacated the decision of the BZA finding that:
"Upon review of the file now before the court, the court finds the record is still missing exhibits/photos offered by the [Trustees] from the hearing before the [BZA]. Upon review of the record before the court, the Magistrate cannot find the record supports a preponderance of substantial, reliable and probative evidence necessary to support the Board's decision."
 {¶ 5} The Trustees promptly filed objections to the Magistrate's decision arguing that while the record is missing the exhibits and photographs that were used at the BZA hearing, a review of the transcript showed that Crutchfield admitted that he violated the zoning regulations. A hearing was held on May 29, 2003 to address the Trustees' objections to the Magistrate's Decision. On June 5, 2003, the trial court affirmed the Magistrate's April 30, 2003 decision. The trial court stated the following in its journal entry:
"The Court conducted a careful independent review of the record of proceedings before the [BZA] as submitted and the Magistrate's Decision. The Court has also considered the briefs and oral arguments of counsel. The Court can only consider the record before it. In reaching its' [sic] decision, the BZA had the opportunity to consider evidence not provided to this Court. Upon consideration of the record from which this Court must make its decision, the Court can not [sic] find the Magistrate's Decision contains an error of law or other defect."
 {¶ 6} The Trustees timely appealed the trial court's June 5, 2003 decision to this Court. On August 6, 2003 we dismissed the appeal for lack of a final, appealable order.
 {¶ 7} On December 31, 2003, the trial court found that:
"The [case] file contains an incomplete record of the proceedings before the [BZA]. Specifically, none of the exhibits offered to the BZA, including the notice of violation, court judgment entries, photographs and a lease agreement are contained in the record of proceedings as filed with this Court."
 {¶ 8} After reviewing the prior proceedings, the parties' briefs, and oral arguments, the trial court found that it could "only consider the record before it." The trial court held:
"From the record of proceedings before the BZA as submitted to this Court, the Court can not [sic] find a preponderance of substantial, reliable, and probative evidence necessary to affirm the BZA's decision."
 {¶ 9} The trial court affirmed the Magistrate's Decision and vacated the decision of the BZA.
 {¶ 10} The Trustees have timely appealed, asserting one assignment of error.
 II Assignment of Error Number One
"The trial court abused its discretion in not upholding the decision of [the bza] when there was sufficient evidence on the record to support the [BZA's] decision."
 {¶ 11} In its sole assignment of error the Trustees have argued that the trial court abused its discretion when it vacated the decision of the BZA. Specifically, the Trustees have asserted that even though the record before the trial court was not complete, the transcript provided a preponderance of substantial, reliable, and probative evidence necessary to support the BZA's decision. We disagree.
 {¶ 12} Crutchfield's administrative appeal from the BZA's decision to the common pleas court was governed by R.C. 2506.01
et seq. See R.C. 2506.01. When reviewing a decision pursuant to R.C. 2506.04, the common pleas court.
"[C]onsiders the `whole record,' including any new or additional evidence admitted under R.C. 2506.03, and determines whether the administrative order is unconstitutional, illegal, arbitrary, capricious, unreasonable, or unsupported by the preponderance of substantial, reliable, and probative evidence."Henley v. Youngstown Bd. of Zoning Appeals (2000),90 Ohio St.3d 142, 147.
Pursuant to R.C. 2506.04, the common pleas court may "affirm, reverse, vacate, or modify the order * * * or remand the cause to the officer or body appealed from with instructions to enter an order * * * consistent with the findings or opinion of the court."
 {¶ 13} While the Trustees' appeal to this Court is also governed by R.C. 2506.01 et seq., "[t]he standard of review to be applied by [this Court] in an [sic] R.C. 2506.04 appeal is `morelimited in scope.'" (Emphasis sic.) Henley,90 Ohio St.3d at 147, citing Kisil v. Sandusky (1984), 12 Ohio St.3d 30,34. InHenley the Ohio Supreme Court explained its analysis of this Court's review procedure stating:
"[R.C. 2506.04] grants a more limited power to the court of appeals[,] * * * which does not include the same extensive power to weigh `the preponderance of substantial, reliable, and probative evidence,' as is granted to the common pleas court. It is incumbent on the trial court to examine the evidence. Such is not the charge of the appellate court. * * * The fact that the court of appeals * * * might have arrived at a different conclusion than the administrative agency is immaterial. Appellate courts must not substitute their judgment for those of an administrative agency or a trial court absent the approved criteria for doing so." Henley, 90 Ohio St.3d at 147. (Citations omitted).
 {¶ 14} Therefore, when reviewing a trial court's order which determined an appeal from an administrative agency based upon the sufficiency of the evidence, "[w]e must affirm the [trial court] unless that court's decision `is not supported by a preponderance of reliable, probative and substantial evidence.'" Russell v.Pub. Health, Hous. Appeals Dept. (2001), 142 Ohio App.3d 430,432. (Citations omitted). In making this determination, this Court applies an abuse of discretion standard. Id. An abuse of discretion is more than an error of judgment, but instead demonstrates "perversity of will, passion, prejudice, partiality, or moral delinquency." Pons v. Ohio State Med. Bd. (1993),66 Ohio St.3d 619, 621.
 {¶ 15} The record before the trial court, and this Court, included the transcript of the hearing before the BZA, a transcript of the hearing before the trial court reviewing the Trustees' objections to the Magistrate's decision, and the various filings in the trial court and this Court. Missing from the record before the trial court and this Court was the notice of violation, court judgment entries, Crutchfield's lease agreement for his new business location, and the photographs of the alleged violation that are discussed throughout the BZA hearing transcript. The trial court granted the Trustees ample time to produce the missing evidence, but said evidence could not be located and was never produced for review.
 {¶ 16} The transcript of the BZA hearing provided the main evidence the trial court used to review the BZA's decision. The Trustees presented Zoning Inspector Neil Jones ("Jones") as their only witness. Jones testified to the following. Jones took pictures of the Property showing that Crutchfield was still operating his business out of the Property. The pictures were taken on fifteen different days from April 10 through May 24, 2002 and showed trailers, without tractors/cabs, and several cars near Crutchfield's garage on the Property. Some of the pictures show work being conducted on the tractor/cab of a vehicle or a trailer backed up to the barn with the doors open. A couple of the trailers appeared to be used for transporting horses, one truck was marked as "Satin Ride." Jones was never close enough to obtain the license plate numbers off of the trailers or able to determine ownership of the trailers. Jones took the pictures from the roadside and never saw anyone moving back and forth between the trailers, that is, he never witnessed any loading or unloading of the trailers. Jones issued the citation/notice of violation based on his personal observations of the Property, the complaints of the Property's neighbors, and the Trustees' suggestions to monitor the Property for violations.
 {¶ 17} On cross-examination, Jones testified to the following. Prior to 2000, the Property had several tractors and trailers on it, mostly from different companies. In the present pictures of the Property only one tractor is on the Property, but Jones thought he remembered seeing more than one tractor on the Property at some point. Jones admitted that he knew Crutchfield had rented an office on Route 18. Ridgewood Stables, which is owned by Crutchfield's neighbor, is located to the east side of the Property's barn. Ridgewood Stables trains horses, provides riding lessons, and conducts horse shows. Jones stated "I think the parking lot in front of the stables is contiguous to the parking or the area of [Crutchfield's]."
 {¶ 18} Jones' cross-examination continued and he testified to the following. While he saw people drive onto the Property and enter Crutchfield's barn, he did not know if they were employees or guests of Crutchfield. Crutchfield had previously hauled horses for his neighbor and Jones was not sure if Crutchfield was still working for his neighbor. Crutchfield serviced his trucks and cars on the Property. Jones admitted that a truck driver can bring his truck home and park it overnight and that the pictures show the same purple tractor/cab on the Property. Jones also admitted that some of the pictures he testified to were of Ridgewood Stables' property.
 {¶ 19} Crutchfield testified to the following on his own behalf. He runs H F Transportation, which is located at 4896 Gateway Drive in Medina, Ohio ("Gateway"). Every aspect of the business, other than storing equipment, is conducted at Gateway. Prior to 2002, Crutchfield conducted his business out of the barn on the Property. The trailers are now stored at M M Towing, which is located at 3172 Ridge Road. When freight transfers are required they are conducted at M M or other various lots. Crutchfield receives a call for a transport and from Gateway dispatches a driver to the location. He has a secretary that works at Gateway; she has never been to the Property.
 {¶ 20} Crutchfield's testimony continued with him reviewing the photographs taken by Jones. The tractor in the photograph taken on May 24, 2002, is the tractor Crutchfield drove home from work and the straight truck in the barn is used to change lights in the barn; Crutchfield had no idea whose cars were in the picture. Crutchfield told his neighbor, who was providing horse riding lessons at Ridgewood Stables, that his customers could park by the barn on Crutchfield's Property. Crutchfield still transports horses out of Ridgewood Stables. The Satin Ride truck in the pictures is used to transport the horses from Ridgewood Stables and is on his neighbor's property.
 {¶ 21} Crutchfield continued his testimony and explained that because "of a fanatic neighbor," he instructs his employees to call him with questions, rather than drive over. While his secretary handles the business, Crutchfield sometimes works on cars during the day in the barn on the Property. Crutchfield does not allow his employees, most of whom own their own trucks, to service their vehicles on the Property. Crutchfield does allow his son to work on his own car on the Property. Crutchfield's company has about six tractors and ten trailers, which are stored at M M Towing, except for the one he drives to and from the Property.
 {¶ 22} When Crutchfield was shown pictures of some trailers that were allegedly on the Property, he was only able to recognize one as his, he could not identify the other trailers. He thought the other trailers might belong to his neighbor at Ridgewood Stables. Crutchfield's testimony continued as follows. He explained that one of his trucks is currently parked at Ridgewood Stables because his company is picking up horses for them. He does not do any independent commercial trucking, book work, office work, fielding phone calls, or transferring goods at the Property. He does not store trailers on the Property. After driving a company truck home from storage at M M Towing, Crutchfield sometimes services the truck on the Property.
 {¶ 23} Crutchfield continued his testimony on cross-examination. Crutchfield drives a company truck to M M Towing, picks up a company car and drives the car to Gateway. At the end of his work day, he drives the company car back to M M Towing and takes a company truck back to the Property. When asked about his driving pattern, Crutchfield answered "I just do it." Crutchfield admitted he was doing business from February 9, 2002 until March 5, 2002, on the Property, but he did not have any employees there; he thought his stay would be granted pending the outcome of the appeal. After February 9, 2002, most of the trailers were not on the Property. Crutchfield admitted to dispatching trucks from the Property until he rented Gateway in March 2002.[1] From February 9, 2002 through March 5, 2002, Crutchfield was looking for an office location.
 {¶ 24} Crutchfield admitted that he did not have all of his company equipment removed from the Property within the 90 day limit prescribed by this Court. He admitted that he has "done some maintenance and service on [company used] vehicles" that he owns.
 {¶ 25} Upon review of the limited record, this Court finds that the trial court did not abuse its discretion in finding that it could "not find a preponderance of substantial, reliable, and probative evidence necessary to affirm the BZA's decision." While the transcript of the BZA hearing provides evidence as to Crutchfield's recent activities on the Property, without the actual notice of violation, or a copy of it, and the photographs used to file the violation and relied upon by the BZA, the trial court was limited to ruling on the transcript. Unfortunately, the transcript also creates holes in the evidence because a majority of Jones' testimony and much of Crutchfield's contains each of them describing the photographs; without the photographs the trial court's review of the testimony is hampered.
 {¶ 26} Furthermore, this Court is not persuaded by the Trustees' argument that Crutchfield's admission that when he drives one of the company trucks home he sometimes services it on the Property proves the violation. The trial court and this Court were not provided with the notice of violation, which hinders the reviewability of whether or not Crutchfield committed a violation because we do not know, based on the record, what Crutchfield allegedly did to violate the zoning regulations.[2] Without the notice of violation, the photographs, and the other admitted evidence, all of which the BZA utilized in making its decision that Crutchfield violated the zoning regulations, this Court cannot find that the trial court abused its discretion in vacating the BZA's decision based on a lack of substantial, reliable, and probative evidence. Accordingly, the Trustees' sole assignment of error is without merit.
 III {¶ 27} The Trustees' sole assignment of error is overruled. The judgment of the trial court is affirmed.
Judgment affirmed.
The Court finds that there were reasonable grounds for this appeal.
We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Medina, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.
Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(E). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.
Costs taxed to Appellant.
Exceptions.
Boyle, J., Concurs.
Carr, P.J., Concurs in Judgment only.
[1] The pending notice of violation was filed on April 11, 2002.
[2] This Court notes that Crutchfield's testimony may have been enough to establish a contempt citation, since he was enjoined and restrained from servicing his vehicles on the property, but the matter before this Court, and the trial court before us, was a new violation. Further, a contempt citation had been filed, but was dismissed.