[Cite as *State v. Tiedjen*, 2019-Ohio-2430.]

# Court of Appeals of Ohio

## EIGHTH APPELLATE DISTRICT
## COUNTY OF CUYAHOGA

JOURNAL ENTRY AND OPINION
**No. 106794**

# STATE OF OHIO

PLAINTIFF-APPELLEE

vs.

# JOHN R. TIEDJEN

DEFENDANT-APPELLANT

## JUDGMENT:
### REVERSED AND REMANDED

Criminal Appeal from the
Cuyahoga County Court of Common Pleas
Case No. CR-89-238376-ZA

**BEFORE:** Blackmon, J., Kilbane, A.J., and S. Gallagher, J.

**RELEASED AND JOURNALIZED:** June 20, 2019

**ATTORNEY FOR APPELLANT**

Kimberly Kendall Corral
4403 St. Clair Avenue
Cleveland, Ohio 44133


**ATTORNEYS FOR APPELLEE**

Michael C. O'Malley
Cuyahoga County Prosecutor

By: Frank Romeo Zeleznikar
Kristen Sobieski
Assistant County Prosecutors
The Justice Center, 9th Floor
1200 Ontario Street
Cleveland, Ohio 44113

PATRICIA ANN BLACKMON, J.:

{¶1} John Tiedjen ("Tiedjen") appeals from the trial court's denial of his motion for leave to file motion for new trial and assigns the following errors for our review:

I. The trial court erred in failing to grant a new trial or, in the alternative, a more complete hearing on the appellant's motion for a new trial.

II. The trial court erred in failing to grant appellant's motion for new trial where the government withheld *Brady* evidence that was material to the guilt or non-guilt of the appellant.

III. The trial court erred in limiting the scope of the defense expert's testimony as his expertise and his opinion bore directly on whether the new evidence was material and/or exculpatory.

IV. The trial court erred in failing to properly sanction the government for attempting to admit a falsified and inaccurate affidavit as evidence.

{¶2} Having reviewed the record and pertinent law, we vacate the court's judgment and remand this case for either: (1) an evidentiary hearing based on *State v. Jones*, 71 Ohio St.3d 293, 643 N.E.2d 547 (1994), to determine whether Tiedjen is substantially responsible for the missing evidence if the evidence is, in fact, still missing; or (2) a full hearing on Tiedjen's motion for a new trial if the evidence is located. The apposite facts follow.

## I. Facts and Procedural History

{¶3} Tiedjen and Brian McGary ("McGary") "were as close as natural brothers" and lived in the upstairs apartment of a house on E. 57th Street in Cleveland. On the morning of April 1, 1989, the Cleveland police found McGary's body in the bedroom of the apartment. McGary had been stabbed in the left chest and shot in the forehead with a

.22 caliber rifle. McGary was 18 years old at the time of his death. Initially, Tiedjen told his family and friends that he did not know how McGary died, although he believed McGary committed suicide. Tiedjen was arrested later in the day on April 1, 1989. He originally told the police that he did not know how McGary died, but on April 4, 1989, after three days of interrogation, Tiedjen gave a written statement to the police indicating that he shot McGary in self-defense.

{¶4} On April 18, 1989, Tiedjen was indicted for murder with a firearm specification. On June 2, 1989, 45 days after Tiedjen was indicted, a jury found him guilty as charged, and the court sentenced him to 15-years-to-life in prison for the murder and three years in prison for the firearm specification.

{¶5} Tiedjen filed a direct appeal, and on February 7, 1991, this court affirmed his convictions. *State v. Tiedjen*, 8th Dist. Cuyahoga No. 57996, 1991 Ohio App. LEXIS 547 (Feb. 7, 1991). On October 27, 2004, Tiedjen filed a postconviction motion to retain blood evidence, which the trial court denied. This court affirmed the denial of Tiedjen's postconviction motion in *State v. Tiedjen*, 8th Dist. Cuyahoga No. 85674, 2004-Ohio-4989, concluding that there was no indication that the blood evidence was part of the trial court record.

{¶6} On October 3, 2016, Tiedjen filed a motion for leave to file a motion for new trial based on newly discovered evidence. The court initially denied this motion; however, the court subsequently vacated the denial and allowed Tiedjen to supplement his motion. Although captioned as a "motion for leave," Tiedjen argues in this document

that he is entitled to a new trial under Crim.R. 33 and *Brady v. Maryland*, 373 U.S. 83, 87, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963).

**{¶7}** To support his request for a new trial, Tiedjen argues that he discovered[1] 76 crime-scene photographs that were suppressed or never produced by the police, the prosecutor, or both. Tiedjen further argues that the newly discovered photographs differed, allegedly in substance, from the ten photographs of the crime scene that were introduced as evidence during Tiedjen's murder trial. Additionally, Tiedjen argues that these newly discovered photographs are material and exculpatory, because "modern crime scene reconstruction technology has now made it possible to conclusively demonstrate that [McGary] committed suicide; * * * the shooting could not have occurred as the government argued at trial; [and] Tiedjen's alleged confession is demonstrably false." Tiedjen also argues that the photographs show that the government manipulated the crime scene.

**{¶8}** On July 25, 2017, September 21, 2017, and October 18, 2017, the court held hearings ("the 2017 hearings") on Tiedjen's motion. At these hearings, all 86 crime-scene photographs were introduced into evidence. On January 9, 2018, the court denied the motion for leave, finding that, although the photographs qualified as newly discovered evidence, Tiedjen "failed to show the photographs are indeed exculpatory

---

[1]According to the record, Tiedjen received the new photographs from the Cleveland Police Department after making a request under the Freedom of Information Act. Although the time frame of this request is unclear, Tiedjen argued in his motion for leave for a new trial that "[i]t was only within the last year that Tiedjen fully understood the impact of the staged photographs."

material." The court also limited the expert forensic testimony that Tiedjen proffered finding that "improvement in crime scene reconstruction" was not newly discovered evidence. It is from this order that Tiedjen appeals.

## II. Missing Evidence

{¶9} Prior to beginning our review of this case, we sua sponte raise the following issue: all exhibits from the 2017 hearings, including the newly discovered photographs, copies of the Cleveland Police Department property log book from April 1, 1989, and some of the police reports from the 1989 investigation, are missing from the appellate record. Furthermore, the ten photographs, plus four other exhibits[2] that were introduced into evidence at the 1989 trial, are missing from the trial court record. Additionally, although this would not be part of the record but may be a source of information in light of the missing evidence, the prosecutor's 1989 trial file is missing as well.

{¶10} The missing evidence in this case was last seen at the 2017 hearings. According to the transcript of these hearings, the exhibits were marked and admitted into evidence. Specifically, the court instructed the parties to give the exhibits to the court reporter. When Tiedjen filed his notice of appeal, he properly instructed the clerk's office to "prepare and assemble the original papers and exhibits filed in the trial court [including the] [c]omplete transcript under Appellate Rule 9(B)."

{¶11} App.R. 9(E) states, in part, that

---

[2]According to the 1989 trial transcript, 14 exhibits were introduced into evidence at Tiedjen's trial. Currently, none of these exhibits can be located.

[i]f anything material to either party is omitted from the record by error or accident * * *, the parties by stipulation, or the trial court, * * * or the court of appeals, on proper suggestion or of its own initiative, may direct that omission or misstatement be corrected, and if necessary that a supplemental record be certified, filed, and transmitted. All other questions as to the form and content of the record shall be presented to the court of appeals.

{¶12} In accordance with *State v. Tate*, 140 Ohio St.3d 442, 2014-Ohio-3667, 19 N.E.3d 888, when this court discovered that all exhibits from the 2017 hearings, as well as the exhibits from Tiedjen's trial, were not part of the record, we sua sponte informed the parties that the evidence was missing, instructed them to supplement the record pursuant to App.R. 9, and issued three extensions of time to complete the task. To date, the parties concede that the missing evidence cannot be located or recreated, thus rendering compliance with App.R. 9(C) futile. Accordingly, because the parties are unable to supplement the record as ordered, this court has not had the opportunity to view the newly discovered photographs.

{¶13} At oral argument, defense counsel stated that, in light of the missing evidence, the parties and the court could not comply with App.R. 9, because the photographs could not be recreated or stipulated to. *See Crutchfield v. Sharon Twp. Bd. of Zoning Appeals*, 9th Dist. Medina No. 04CA0006-M, 2004-Ohio-6265, ¶ 25 (vacating a zoning violation based on missing evidence and finding that a description of photographs in a transcript is inadequate without the photographs themselves. "[W]ithout the actual notice of violation, or a copy of it, and the photographs used to file the violation and relied upon by the BZA, the trial court was limited to ruling on the transcript. Unfortunately, the transcript also creates holes in the evidence because a

majority of [the] testimony * * * contains [witnesses] describing the photographs; without the photographs the trial court's review of the testimony is hampered").

{¶14} In the case at hand, the state conceded that the parties have black-and-white photocopies of two of the missing pictures, which are interspersed into Tiedjen's court filings. However, these two copies are not reprints of the color photographs and do not depict the original photographs in any type of detail. Indeed, they most closely resemble ink blots. The state further conceded that Tiedjen is not at fault in relation to the missing photographs.

{¶15} Accordingly, we find that the record cannot be settled on remand without the missing photographs. While a trial court record need not be perfect for appellate review, we must balance adequacy of the record with the deprivation of a defendant's due process rights. *See State v. Skatzes*, 104 Ohio St.3d 195, 2004-Ohio-6391, 819 N.E.2d 215, ¶ 161.

{¶16} In *Skatzes,* the trial court "failed to keep control of the charts used by the prosecutors during voir dire." *Id.* at ¶ 160. The Ohio Supreme Court found that the "whereabouts of the charts were currently unknown." *Id*. The defendant argued that "effective appellate review is impossible without the exhibits." *Id.* However, the court concluded otherwise, finding that the defendant: failed to request that the exhibits be admitted into evidence in the trial court; "made no attempt to recreate the contents of the charts pursuant to App.R. 9(C)"; and failed to make a showing of prejudice. *Id.* at ¶ 163.

**{¶17}** Upon review, we find that the case at hand is distinguishable from *Skatzes*. In *Skatzes*, the missing evidence was charts used in voir dire that were never made part of the record. Furthermore, the parties in *Skatzes* did not attempt to comply with App.R. 9.

**{¶18}** In the case at hand, Tiedjen presented newly discovered evidence to the trial court in 2016; the photographs were admitted into evidence in open court and made part of the record; Tiedjen has not been dilatory and has proceeded in a timely fashion ever since; the parties attempted, but were unable, to comply with App.R. 9; and the photographs are critical to the disposition of Tiedjen's arguments. Accordingly, we find that Tiedjen has been denied his right to meaningful appellate review.

**{¶19}** Upon remand, if the evidence is still missing, we direct the trial court to hold an evidentiary hearing to determine whether Tiedjen is substantially responsible for the missing exhibits pursuant to the Ohio Supreme Court's holding in *State v. Jones*, 71 Ohio St.3d 293, 643 N.E.2d 547 (1994).

**{¶20}** We further note that there is no evidence before this court of any wrongdoing on Tiedjen's part. *See In re Holmes*, 104 Ohio St.3d 664, 2004-Ohio-7109, 821 N.E.2d 568, ¶ 14 ("reject[ing] the notion that an appellant has the duty to supervise the actions of a trial court clerk to ensure the proper transmission of the record"). We also note that it is the duty of the court reporter to correctly prepare the transcript. *See* App.R. 9(B)(6)(f) and (g) ("A transcript of proceedings under this rule shall [contain] [a]n index to exhibits, whether admitted or rejected, briefly identifying each exhibit [and] [e]xhibits such as papers, maps, photographs, and similar items that were admitted shall

be firmly attached, either directly or in an envelope to the inside rear cover * * *").

{¶21} "In the event the defendant's misconduct is determined not to be the cause of the nonproduction of the appellate record, absence of the record may require reversal of the underlying conviction and the grant of a new trial." *Jones*, 70 Ohio St.3d 293, 297. *See also Knapp v. Edwards Laboratories*, 61 Ohio St.2d 197, 400 N.E.2d 384 (1980) (a new trial may be granted if it is determined, after an evidentiary hearing, that the record is incomplete and the moving party is not at fault); *State v. Polk*, 8th Dist. Cuyahoga No. 57511, 1991 Ohio App. LEXIS 900 (Mar. 7, 1991) (granting a new trial when the transcript was unavailable through no fault of the parties).

## III. Standards of Review of Assigned Errors

{¶22} We review Tiedjen's assigned errors in part should the missing evidence be located on remand. In summary, we find the following: (1) the court erred by denying Tiedjen's motion for leave; (2) the court abused its discretion by limiting Tiedjen's expert witness's testimony to the extent the testimony was offered to show that the newly discovered evidence was exculpatory and material; and (3) Tiedjen's arguments are not barred by the doctrine of res judicata.

### A. Motion for Leave to File Motion for New Trial

{¶23} Generally, motions for a new trial must be filed within 14 days of the verdict. Crim.R. 33(B). However, when the motion is based on newly discovered evidence, it must be filed within 120 days after the verdict was rendered. *Id.*

**{¶24}** As a exception to this rule, a court may grant leave to file a motion for a new trial if "it is made to appear by clear and convincing proof that the defendant was unavoidably prevented from the discovery of the evidence upon which he must rely * * * within the [120]-day period." *Id.* *See also State v. Corrothers*, 8th Dist. Cuyahoga No. 75668, 2000 Ohio App. LEXIS 344 (Feb. 3, 2000). Ohio courts have defined "newly discovered evidence" as "evidence of facts in existence at the time of trial of which the party seeking a new trial was justifiably ignorant." (Citations omitted.) *State v. Holzapfel*, 10th Dist. Franklin Nos. 10AP-17 and 10AP-18, 2010-Ohio-2856, ¶ 20.

**{¶25}** As an example, this court recently held that a defendant's "supporting documents clearly and convincingly demonstrate that the appellees were unavoidably prevented from discovering the evidence," because "the police reports at issue were in the exclusive control of the state." *State v. Glover*, 8th Dist. Cuyahoga Nos. 102828, 102829, and 102831, 2016-Ohio-2833, ¶ 29.

### B. Motion for a New Trial Based on Newly Discovered Evidence

**{¶26}** Crim.R. 33(A)(6) governs motions for a new trial based on newly discovered evidence. To grant a properly filed motion under this rule, courts must find that the new evidence "discloses a strong probability that it will change the result if a new trial is granted, * * * is material to the issues, * * * is not merely cumulative to former evidence, and * * * does not merely impeach or contradict the former evidence." *State v. Petro*, 148 Ohio St. 505, 76 N.E.2d 370 (1947), at syllabus.

## C.   *Brady* Violation

**{¶27}** *Brady v. Maryland*, 373 U.S. 83, 87, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963), governs situations when the state withholds evidence that tends to exculpate a criminal defendant.   "When the prosecution withholds material, exculpatory evidence in a criminal proceeding, it violates the due process right of the defendant under the Fourteenth Amendment to a fair trial."   *State v. Johnston*, 39 Ohio St.3d 48, 60, 529 N.E.2d 898 (1988).   *Brady* violations may be found regardless of whether the defense requested the evidence and "irrespective of the good faith or bad faith of the prosecution."   *Brady* at 82, 87.   In determining whether suppressed evidence is material, courts consider whether "there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different."   *United States v. Bagley*, 4732 U.S. 667, 682, 105 S.Ct. 3375, 87 L.Ed.2d 481 (1985).   "A 'reasonable probability' is a probability sufficient to undermine confidence in the outcome."   *Id.*

**{¶28}** The "defendant bears the burden to show that the evidence not produced was materially exculpatory, or that the failure to produce the evidence was based on bad faith, in order to demonstrate a due-process violation."   *State v. Hartman*, 2d Dist. Montgomery No. 26609, 2016-Ohio-2883, ¶ 84, citing *State v. Powell*, 132 Ohio St.3d 233, 2012-Ohio-2577, 971 N.E.2d 865, ¶ 74-77.

## D.   Limiting the Expert Witness Testimony

**{¶29}** "The admission or exclusion of relevant evidence rests within the sound discretion of the trial court." *State v. Sage*, 31 Ohio St.3d 173, 180, 510 N.E.2d 343 (1987). "Expert testimony in Ohio is admissible if it will assist the trier of fact in search of the truth." *State v. Koss*, 49 Ohio St.3d 213, 216, 551 N.E.2d 970, 1990 Ohio LEXIS 92 (1990). The test for admissibility of expert testimony "is whether the questioned evidence is relevant and will assist the trier of fact in understanding evidence presented or in determining a fact in issue." *State v. Clark*, 101 Ohio App.3d 389, 655 N.E.2d 795 (8th Dist.1995). *See also* Evid.R. 702.

## E.   Res Judicata

**{¶30}** Under the doctrine of res judicata, a convicted defendant is generally barred from raising in a postconviction motion any constitutional claims that were, or could have been, raised at trial or on direct appeal. *State v. Steffen*, 70 Ohio St.3d 399, 410, 639 N.E.2d 67 (1994). However, exceptions apply to matters not capable of being raised on direct appeal.

> Because an appeal from the judgment of conviction is limited to the trial court record, a petition for post-conviction relief may defeat the res judicata bar if its claims are based on evidence outside the record. New evidence attached to the petition for post-conviction relief, however, does not automatically defeat the res judicata bar. Evidence outside the record must meet 'some threshold standard of cogency; otherwise it would be too easy to defeat [res judicata] by simply attaching as exhibits evidence which is only marginally significant and does not advance the petitioner's claim[.]' Moreover, the evidence dehors the record must not be evidence which was in existence and available for use at the time of trial and which could and should have been submitted at trial if the defendant wished to use it.

*State v. Slagle*, 8th Dist. Cuyahoga No. 76384, 2000 Ohio App. LEXIS 3641 (Aug. 10, 2000).

## IV. The 2017 Hearings

{¶31} At the 2017 hearings, Daniel Chaplin, who was one of Tiedjen's trial attorneys in 1989, testified that, at the time of the trial, he had never seen the photographs that are now being alleged as newly discovered. According to Chaplin, on the day of trial, he was shown only the ten photographs that were admitted as evidence.

> The reason I can be confident about that is that in some of the — there was evidence in the statement that Tiedjen had called his mother and expressed that his stepbrother committed suicide and the note[3] would have been followed up, and the juxtaposition of the weapon would have been further investigated, but we didn't do any of that because we didn't know about it.
>
> * * *
>
> Under the old rule, we didn't get the photos — the photos were not developed generally until the day before or the day of trial. If you were set for trial at 9:00 in the morning and you didn't plead out, the photos would come into the prosecutor's hand at 1:00 in the afternoon, and that's when you would get them, before.

{¶32} Asked if he had any time prior to trial to go through the photos, Chaplin replied, "Absolutely not." The prosecutor asked, "So no time whatsoever prior to trial?"

---

[3]Although we do not have the newly discovered photographs to review at the 2017 hearings, there was testimony that the photographs showed a piece of paper sticking out of McGary's pocket. Defense counsel argues that this paper may have been a suicide note. This piece of paper was not submitted as evidence and defense counsel did not know it existed at the time of trial.

"No," Chaplin responded. Asked why he didn't request a continuance, Chaplin testified that "[i]t was a different time. * * * That was routine * * *."

{¶33} Chaplin further testified that he had never seen the photograph that depicts the victim's ex-girlfriend's purse and jacket in the victim's bedroom when his body was discovered. Chaplin explained, "So we did not see the photo that indicates that there was the presence of another person. * * * Well, we weren't able to pursue alternate aggressors or third persons that were in the room as possible suspects. If there was a third person there, we didn't know anything about them."

{¶34} Steven Dever, who was the prosecutor at Tiedjen's trial in 1989, stated that while he remembered the case in general, his file, including his notes, could not be located from the prosecutor's office. Asked if he recalled the discovery that was exchanged prior to and during Tiedjen's trial, Dever testified as follows: "Well, without any notes to refresh my recollection, no. I can only testify as to what my custom or practice was, as well as what the — what the operations of the major trials division at that time were." According to Dever, the state would "ordinarily provide discovery and discuss cases so that if it had to go to trial, * * * there wouldn't be any surprises, and that the defense was given all the information that was available to us in order to properly defend their client."

{¶35} Dever testified that typically "photographs were identified in the police reports. Those would have been printed up and shared with the defense team. They had the ability at that time also to order their own set of photographs."

{¶36} According to Dever, his practice was to show exculpatory photographs to the defense attorneys, but nothing was ever copied and given to them. In other words, the attorneys would sit in a room and read the state's file together.

{¶37} As to Tiedjen's case specifically, asked if he recalled showing the photos of the crime scene to defense counsel, Dever replied, "All I can testify to is what my practice was, and I think you would have to go and look at what photos were admitted into evidence and then you can draw a fair inference that the photos were here." As noted previously, the police reports from the 1989 investigation of Tiedjen are not part of the record on appeal, although they appear to have been used at the 2017 hearings.

{¶38} Dennis Murphy, who was the Cleveland police detective who investigated Tiedjen's case in 1989, submitted an affidavit, dated July 16, 2017, detailing various facts of his investigation. In this affidavit, Murphy stated that 43 crime scene photos were taken on April 1, 1989, and an additional 25 crime scene photos were taken on April 6, 1989. It appears that this information was taken directly from Murphy's 1989 police report, but because that is not part of the record on appeal, we cannot be sure of this. The affidavit also stated that the photographs "were not staged, manipulated, or withheld by the Cleveland Police Department at any point during the investigation."

{¶39} At the court's suggestion, Tiedjen's defense counsel deposed Murphy, who was bedridden, on September 14, 2017. In this deposition, Murphy stated that he did not recall Tiedjen's case, nor did he recall the victim, McGary. Asked if he recognized his affidavit, which he signed approximately two months prior to the deposition, Murphy

replied, "No, not really.  I'm just reading it."  Asked if he recalled the events that he described in the affidavit, Murphy replied, "No.  I don't remember this, you know."  The colloquy continues:

A:    Whatever's in there is the truth.

Q:    But you don't recall this?

A:    No.  Not now I don't, no.

Q:    And when you signed this on July 16th of 2017, you didn't recall it back then either, did you? * * *

A:    What's today?

Q:    Today is September 14th.

A:    Yeah, okay.

Q:    So two months ago —

A:    Yeah. All right.

Q:    Two months ago, you signed this affidavit?

A:    Right, yeah.

Q:    And you read it over, but you don't recall —

A:    I read it over, but — I signed my name to it, yeah.

Q:    And you didn't recall these events as you read it over?

A:    No.

{¶40} Tiedjen next attempted to introduce the testimony of an expert crime scene reconstructionist to show that the newly discovered photographs were exculpatory in nature.  It is at this juncture that it becomes clear the court was proceeding under an

incorrect standard. The state objected to this testimony, arguing that it was premature, because the only motion before the court was a motion for leave. In ruling on the admissibility of this expert's testimony, the trial court outlined the following standard under which it was considering the motion for leave:

> Well, first I have to decide, was it given to his lawyers or not? I have to determine that issue. Then I have to determine, is it exculpatory? And then I have to determine that lack of that information does it rise to the level of giving him leave?
>
> I don't see how this testimony is relevant. * * *
>
> So I don't disregard him. I think he's a very talented man. I just don't think this is the right spot for this testimony.
>
> * * *
>
> He's not allowed to show me it's exculpatory. Right? That's my job, to decide if it's exculpatory. It's your job to argue that it is. It's their job to argue that it's not. Then I can make a legal decision on that.
>
> An expert's only brought into a case to help the fact finder on issues with which they're not familiar and are not within their realm of knowledge. I think I can make a decision on what's exculpatory evidence.
>
> * * *
>
> What is new and did it deprive him of a fair trial. That's all we need to talk about right now.

## V. Analysis

### A. Commingled Consideration: Motion for Leave and Motion for New Trial

{¶41} In *State v. Gaven*, 10th Dist. Franklin No. 16AP-645, 2017-Ohio-5524, the appellate court held that the trial court failed to separate the defendant's motion for leave

and his motion for a new trial. "Specifically, the trial court's analysis improperly 'conflates two distinct issues' by resolving the motion for leave based on the merits of whether the appellant is entitled to a new trial rather than addressing the threshold issue of whether appellant was unavoidably prevented from discovering new evidence." *Id.* at ¶ 20, quoting *State v. McConnell*, 170 Ohio App.3d 800, 2007-Ohio-1181, 869 N.E.2d 77, ¶ 20 (2d Dist.).

**{¶42}** The instant case is similar to *Gaven* in that the court, as well as the parties, at times treated Tiedjen's motion for leave as a motion for a new trial. The court (1) found that the photographs were "newly discovered evidence under Crim.R. 33"; (2) was silent on the issue of whether Tiedjen was unavoidably prevented from discovering them; (3) found that the expert crime scene reconstructionist's testimony was not "newly discovered" and was irrelevant to whether the photographs were material or exculpatory; and (4) denied Tiedjen leave to file a motion for new trial.

**{¶43}** Chaplin was the only person to testify who had a firsthand recollection of the 1989 trial, and he testified that the state showed him ten photographs, all of which were introduced at trial. Chaplin further testified that he did not know any other photographs existed. Dever was unable to testify about anything relating to this case specifically. Murphy testified in deposition that he had no recollection of this case or anything that was in his affidavit for that matter.

**{¶44}** The police reports allegedly indicate that more than ten photographs were taken, but these reports are missing and are not part of the record on appeal.

Furthermore, the reports allegedly indicate that 68 crime-scene photographs were taken. This number is inconsistent with the 86 or 87 photographs that were introduced into evidence at the 2017 hearings. Additionally, although discovery in 1989 criminal cases was not as open as it is today, due process required then, just as it requires now, that the state provide defendants with exculpatory evidence.

{¶45} Upon review, we agree with the trial court that the photographs were "newly discovered" under Crim.R. 33. However, we further find that Tiedjen was unavoidably prevented from discovering them within 120 days from his conviction. Simply put, the photographs existed at the time of Tiedjen's trial, he was justifiably ignorant of this fact, and the photographs were in the exclusive control of the police, the prosecutor, or both. There was no reason to suspect that 76 additional photographs were withheld and every reason to rely on the state sharing all of its evidence against Tiedjen. Although none of Tiedjen's assigned errors raise the issue of leave to file a motion for a new trial, this issue was discussed at oral arguments. Accordingly, the court erred by denying Tiedjen's motion for leave to file a motion for new trial.

{¶46} We additionally conclude that it is impossible to determine whether the trial court abused its discretion in finding the photographs were "not material under Civ.R. 33 or exculpatory under *Brady*." There is no evidence to support the trial court's decision, and without this evidence, we are unable to review Tiedjen's first and second assigned errors. The trial court's denial of Tiedjen's motion for leave is reversed. Case remanded for either: (1) a hearing under *State v. Jones*, 71 Ohio St.3d 293, 643 N.E.2d

547 (1994), to determine whether Tiedjen is substantially responsible if the evidence is still missing; or (2) a full hearing on Tiedjen's motion for a new trial if the evidence is located.

## B. Limiting the Expert Witness's Testimony

{¶47} We also agree with the trial court that Tiedjen's expert witness's testimony is not "newly discovered evidence." However, that is not what Tiedjen was essentially arguing at the 2017 hearings. Tiedjen's expert was called to testify, ideally in relation to a motion for a new trial rather than a motion for leave, as to the exculpatory and material value of the suppressed photographs. It was an abuse of discretion for the court to exclude this testimony when ruling on whether the photographs were exculpatory and material. The value of the newly discovered evidence goes to the merits of Tiedjen's right to a new trial rather than whether he should be granted leave.

{¶48} Whether the newly discovered crime scene photographs are exculpatory or material to the defense may turn on expert testimony in certain situations. The accusations in the case at hand are that the police or the state manipulated the crime scene and withheld exculpatory photographs. Tiedjen may choose to offer expert testimony to explain how these photographs were allegedly exculpatory.

> Finally, we note the [fact-finder] is not required to give any additional weight to the opinion of an expert, if any weight at all. Rather, an expert's opinion is admissible, as is any other testimony, to aid the trier of fact in arriving at a correct determination of the issues being litigated. Expert testimony is permitted to supplement the decision-making process of the 'fact finder' not to supplant it.

*Doss v. Smith*, 8th Dist. Cuyahoga No. 72672, 1998 Ohio App. LEXIS 2853 (June 25, 1998).

**{¶49}** Upon review, we find that the court abused its discretion by limiting the expert's testimony to the extent that it related to whether the newly discovered evidence was material and exculpatory. Tiedjen's third assigned error is sustained.

## C. Res Judicata

**{¶50}** Given our determination that the missing photographs constitute newly discovered evidence that Tiedjen was unavoidably prevented from raising in the trial court or on direct appeal, we also find that his 30-year-old due process claim is not barred by the doctrine of res judicata. *See State v. Reid,* 2d Dist. Montgomery No. 24672, 2012-Ohio-1659, ¶ 10, citing *State v. Davis,* 131 Ohio St.3d 1, 2011-Ohio-5028, 959 N.E.2d 516 ("res judicata would not bar a post-appeal motion for a new trial based upon newly discovered evidence").

## VI. Sanctions for Falsified and Inaccurate Evidence

**{¶51}** Tiedjen argues that the state attempted to submit false testimony in the form of Murphy's affidavit. Given our disposition of this case, we decline to address Tiedjen's fourth assigned error. *See* App.R. 12(A)(1)(c).

**{¶52}** Judgment reversed and case remanded for proceedings consistent with this opinion.

It is ordered that appellant recover of appellee costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate be sent to the Cuyahoga County Court of Common Pleas to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____
PATRICIA ANN BLACKMON, JUDGE

MARY EILEEN KILBANE, A.J., CONCURS;
SEAN C. GALLAGHER, J., DISSENTS. SEE
ATTACHED DISSENTING OPINION

SEAN C. GALLAGHER, J., DISSENTING:

{¶53} I respectfully dissent. The trial court did not abuse its discretion, and the fact that the 76 photographs entered into evidence are now missing is concerning, but not a basis for reversal. Tiedjen admits to having received the disputed photographs in 2014. No motion for leave to file a delayed motion for a new trial was then filed. In 2015, Tiedjen hired an investigator who spoke with the victim's ex-girlfriend and confirmed what was depicted in the missing photographs. Still Tiedjen waited. It was not until October 2016 that the motion at issue was filed, two years after the initial "discovery" of the new evidence upon which the motion rested. That alone demonstrates that a reversal is not warranted in this case. *State v. Bryan*, 8th Dist.

Cuyahoga No. 105774, 2018-Ohio-1190, ¶ 8 (a year from the discovery of "new evidence" exceeds the reasonable time to file a motion for leave to seek a delayed motion for new trial). Tiedjen's motion was not timely.

**{¶54}** Nevertheless, the majority concludes that the missing 76 photos are necessary to the resolution of this appeal and remands for the purpose of determining who's at fault for the missing trial record. This is unnecessary. We are reviewing the denial of a motion for leave to file a delayed motion for new trial under Crim.R. 33, which is reviewed for an abuse of discretion. *State v. Hale*, 8th Dist. Cuyahoga No. 107782, 2019-Ohio-1890, ¶ 7, citing *State v. Washington*, 8th Dist. Cuyahoga No. 103875, 2016-Ohio-5329, ¶ 16; *State v. Gilbert*, 8th Dist. Cuyahoga No. 106358, 2018-Ohio-3789, ¶ 25.

**{¶55}** Tiedjen, in his motion, described a handful of the relevant photographs out of the 76 he then possessed. He explained in detail the basis of his claim that they constituted newly discovered, exculpatory evidence. The trial court conducted a hearing, the transcript of which is in the record, and the court explained its decision denying relief including references to the relevant photographs. The relevant photographs were also described in detail during the hearing. Although it is concerning that the admitted evidence is missing, even if we had the photographs in the record, we would not be reviewing those to render any independent conclusions. Our sole task is to determine whether the trial court abused its discretion in denying Tiedjen's motion for

leave to file a delayed motion for new trial. The record, although incomplete, is sufficient to enable appellate review.

{¶56} On this point, and although the majority remands to determine whether the evidence is truly lost, it is also concluded that if the photographs were to be found, that a full hearing on a delayed motion for new trial must occur. The majority renders a conclusion as to the merits of this appeal notwithstanding the missing evidence. Thus, any claim that the missing evidence is necessary to the current appeal is misplaced.

{¶57} With respect to the merits, and notwithstanding the untimeliness of the motion for leave, the trial court's decision should be affirmed.

{¶58} In his motion, and again in the appellate briefing, Tiedjen claims the photographs he obtained in 2014 demonstrate that the crime scene was staged and that another person may have been present the night of the murder. It is important to note that the original trial photographs were not considered during the hearing on Tiedjen's motion — it is unclear from the record whether the original trial photos were available. The trial defense attorney testified from his recollection and based on the description of the images that could be pieced together from the original trial transcript.

{¶59} According to Tiedjen, the "newly discovered" photographs demonstrated that the victim's ex-girlfriend was present on the night of the murder because the photos depicted a purse and a leather jacket. Nothing demonstrates when those items were left in the victim and Tiedjen's apartment. Tiedjen speculates as to the time frame. The ex-girlfriend told the investigating detectives that she had not been in the apartment for a

couple days. Nevertheless, Tiedjen claims that her presence proved what Tiedjen had been unable to prove over the decades — that the victim committed suicide by stabbing himself in the chest and shooting himself in the head with Tiedjen's small-caliber rifle, with the fatal shot being fired over two-feet from the victim. In further support, Tiedjen claims that another set of relevant photographs depicts a cloth "wrapping" on the victim's hands. According to Tiedjen, this explains the lack of gunshot residue on the victim's hands. And finally, there were pictures depicting similar-looking eyeglasses in different locations, which, again according to Tiedjen's belief, conclusively demonstrates the staging of the crime-scene photos. There is no dispute, however, that the photographs were created on different days and there is no evidence that Tiedjen had only one set of eyeglasses.

{¶60} Most important, Tiedjen was present and personally saw the crime scene the morning after the murder — he lived in the same apartment and he found the victim's body. Tiedjen has not further explained how he was unaware of the details of the crime scene in light of the trial evidence:

> Jeffrey Fleming testified that John Tiedjen came to his house on West 32nd Street on the morning of April 1. Mr. Tiedjen was shaken up and told Fleming that he thought his brother Brian had killed himself with the .22 caliber rifle. Later in the day, Fleming and Tiedjen drove to the home of another mutual friend, Bob Pack. When Tiedjen arrived at Pack's home, Tiedjen gave Pack a .32 caliber revolver and told him to get rid of it.

Further, Tiedjen told Pack that Brian committed suicide as he was upset over a girl. While at that house, Mr. Tiedjen made several phone calls to his mother and told Pack that he had found his brother's body and thought he had killed himself. Alice Tiedjen, the natural mother of John Tiedjen, testified that her son told her that he was drunk and could not remember how Brian had been shot. She notified the police to respond to the apartment on East 57th Street and turned her son into the police. She testified to an incident one week before the homicide in which Brian and John had argued.

* * *

However, on April 4, 1989, the defendant gave a written statement to Detective Murphy. He then told the detective that he and his brother had returned home after drinking and became involved in an argument in the living room. Tiedjen claimed that Brian went to get a pistol and that he grabbed a knife from a table. The two struggled over the knife and Brian was stabbed in the chest. The defendant told Brian that he had enough. Tiedjen went into the bedroom where he heard two gunshots. He grabbed his .22 caliber rifle and went into the hallway, where Brian confronted him with a pistol. He believed Brian was about to shoot him, so he fired one shot at his brother. Brian fell back and Tiedjen returned to his bedroom to sleep. When he woke up the next morning, he found Brian by the bed with

the .22 caliber rifle laying over his feet.

*State v. Tiedjen*, 8th Dist. Cuyahoga No. 57996, 1991 Ohio App. LEXIS 547, at 4-7 (Feb. 7, 1991). Tiedjen would have been aware of how the crime scene looked the morning after the murder. The subject matter of the photographs is not new. *See, e.g., State v. Howard*, 8th Dist. Cuyahoga No. 101359, 2015-Ohio-2854, ¶ 53-54; *State v. Crenshaw*, 11th Dist. Lake No. 2011-L-166, 2012-Ohio-5928, ¶ 70.

{¶61} Further, Tiedjen was not unavoidably prevented from discovering the photographs within 120 days of trial. The trial court came to the same conclusion and concluded that the photographs were known to the defense at the time of trial and thus could have been timely discovered. Although the prosecutor testified that he could not specifically recall the case, he testified to his customary practice, which included the disclosure. Evidently, the trial court placed more credibility with the state's witnesses than the defense's. Thus, there is credible evidence in the record that the defense was aware of the photographs and could have attempted to procure them without having to wait almost three decades. In resolving the conflicting testimony, I would defer to the trial court's determination. Tiedjen has not demonstrated that he was unavoidably unable to discover the photographs in a timely fashion as contemplated under Crim.R. 33.

{¶62} For these reasons, I dissent. The trial court did not abuse its discretion in denying the motion for leave to file a delayed motion for new trial 30 years after the original conviction and more than two years from when the supposed "new evidence" was procurred by the defendant. I would affirm.