[Cite as *State v. Garcia*, 2019-Ohio-4885.]

## COURT OF APPEALS OF OHIO

## EIGHTH APPELLATE DISTRICT
## COUNTY OF CUYAHOGA

| | | |
|---|---|---|
| STATE OF OHIO, | : | |
| Plaintiff-Appellee, | : | No. 107027 |
| v. | : | |
| JESUS GARCIA, | : | |
| Defendant-Appellant. | : | |

### JOURNAL ENTRY AND OPINION

**JUDGMENT:** REVERSED AND REMANDED
**RELEASED AND JOURNALIZED:** November 27, 2019

Criminal Appeal from the Cuyahoga County Court of Common Pleas
Case No. CR-17-622561-A

### *Appearances:*

Michael C. O'Malley, Cuyahoga County Prosecuting Attorney, and Holly Welsh and Tasha Forchione, Assistant Prosecuting Attorneys, *for appellee.*

Britt Newman, *for appellant.*

ANITA LASTER MAYS, J.:

{¶ 1} Defendant-appellant Jesus Garcia ("Garcia") appeals his jury trial convictions for multiple counts arising from the sexual assault of his 13-year-old daughter Jane Doe ("Doe") on two occasions during the summer of 2017.

{¶ 2}    We reverse the trial court's convictions and remand for a new trial.

## I.    Background and Facts

{¶ 3}    Doe was indicted on October 27, 2017, on the following 10 counts:

Count 1:    Rape, a first-degree felony, R.C. 2907.02(A)(2);

Count 2:    Gross sexual imposition, a fourth-degree felony, R.C. 2907.05(A)(1);

Count 3:    Kidnapping, a first-degree felony, R.C. 2905.01(A)(4);

Count 4:    Illegal use of a minor in nudity-oriented material or performance, a second-degree felony, R.C. 2907.323(A)(l);

Count 5:    Endangering children, a second-degree felony, R.C. 2919.22(B)(1);

Count 6:    Rape, a first-degree felony, R.C. 2907.02(A)(2);

Count 7:    Gross sexual imposition, a fourth-degree felony, R.C. 2907.05(A)(1);

Count 8:    Kidnapping, a first-degree felony, R.C. 2905.01(A)(4);

Count 9:    Illegal use of a minor in nudity-oriented material or performance, a second-degree felony, R.C. 2907.323(A)(l); and

Count 10:    Endangering children, a second-degree felony, R.C. 2919.22(B)(1).

The indictments included two sexual motivation specifications pursuant to R.C. 2941.147(A) and six sexually violent predator specifications, pursuant to R.C. 2941.148(A).

{¶ 4}    Doe was 14 years old at the time of the March 2018 trial. Doe has always resided with her maternal grandparents. Doe's mother and her biological father Garcia married several years after Doe's birth, and the couple bore three

additional siblings. Two of the siblings joined Doe at the grandmother's home while her mother and Garcia resided with the remaining sibling. Doe was pleased when in 2017, Doe, her siblings, and parents began to spend time together and do "regular family things." (Tr. 350.)

{¶ 5} At approximately 10:00 a.m. on July 7, 2017, Garcia picked up Doe from her grandmother's house to take her to breakfast. He then took Doe to his house where the two were alone, watching television, when Garcia pulled Doe's shirt up and gave her a "mean look" when she told him "no" and tried to pull her shirt back down. (Tr. 352.)

{¶ 6} Doe said that Garcia made her put on her mother's lingerie and "that's when he started touching me." (Tr. 353.) Garcia touched Doe's breasts and "[he] stuck two fingers in me." (Tr. 353.) He also took pictures of Doe using a silver camera, and warned her that he would post the pictures on the internet if she told anyone about the incident, and that her mother and siblings would hate her. (Tr. 354.)

{¶ 7} On the morning of July 17, 2017, Garcia took Doe and her eight-year-old brother C.G. to Garcia's automobile repair garage that was located several doors from Garcia's residence. Garcia locked the garage doors to prevent C.G. from entering. He removed Doe's shirt, pulled down her pants and underwear, and touched her breasts. Garcia also took photographs and made Doe "touch him." (Tr. 356.)

{¶ 8} Out of fear that Garcia would post the pictures, Doe did not tell anyone what happened. Several weeks later, after attending a church sermon that advised that the truth "will set you free," Doe told her grandparents about the incidents. (Tr. 358.) They contacted Doe's mother and met with Detective Charles McNeely ("Det. McNeely) of the Cleveland Police Department ("CPD"). Doe informed Det. McNeely that Garcia placed the storage chip containing the photographs on top of a tall chest. At that point during the testimony, Doe became visibly distressed. After a brief recess, Doe identified photographs of Garcia's residence and the automotive garage and the state rested. The defense had no questions for Doe.

{¶ 9} Doe's mother testified that she began dating Garcia at the age of 14 and gave birth to Doe at 16. Doe's grandparents are her legal guardians. Doe's mother subsequently married Garcia, and they had three sons. Doe's mother confirmed that Garcia owned the automotive garage and that, when the grandmother and Doe called her in October 2017, Doe was very upset. Her mother said that she did not discuss the conversation with Garcia and did not tell her son C.G. not to speak with anyone about the case. The defense had no questions for the witness.

{¶ 10} The grandmother testified that she allowed Doe to go to breakfast with Garcia the morning of July 7, 2017, and that Doe returned to the grandmother's house a little after 1:00 p.m. She also confirmed that Garcia picked up Doe and her brother C.G. at about 10:00 a.m. on July 17, 2017, and they returned about 7:30 p.m.

Several exterior security cameras at the home documented the presence of Doe, siblings, and Garcia for both dates outside of the house or apparently departing and returning. Doe told the grandmother to tell Garcia that she was doing homework the next time Garcia called to invite her to breakfast.

{¶ 11} The grandmother confirmed that Doe was very upset when she returned from a church service about telling the truth and shared the abuse information with her grandparents who contacted the police. The grandmother insisted that Doe had no reason to fabricate the allegations. "She lost her mother. She doesn't have a father. She is losing her brothers." (Tr. 342.) "She wanted [Garcia] in her life. She was happy." *Id.* "She was happy because they were doing things as a family. Even the brothers are upset now because they can never do anything as a family together." *Id.* The grandmother was also upset that Doe's mother was not supportive of her.

{¶ 12} Det. McNeely, with the CPD Sex Crimes and Child Abuse Unit, and a rape crisis victim's advocate interviewed Doe and her grandmother on October 8, 2017. Search warrants for Garcia's home and the automotive garage were executed on October 19, 2017. Multiple cameras were discovered including several silver cameras as well as storage device cards and flash drives were recovered from the locations. Det. McNeely confirmed during cross-examination that no corroborative evidence was discovered as a result of the searches.

{¶ 13} Garcia's friend David LaFraniere ("LaFraniere") testified for the defense. LaFraniere said that he has known Garcia for about 20 years and also

knows the family. He testified that he has known 14-year-old Doe for roughly "16 or 17 years," but subsequently testified that he first met Doe in June 2017, when Doe accompanied him and Garcia to the Amish country where they were going to repair a vehicle. (Tr. 407.)

{¶ 14} LaFraniere said the case allegations were ridiculous and that Doe and Garcia appeared to get along well. LaFraniere also saw Doe and Garcia at the shop at least three or four times after the trip but never observed anything inappropriate. Doe's siblings were also present during those visits.

{¶ 15} During cross-examination, LaFraniere admitted that he knew about Garcia's 2002 conviction for unlawful sexual conduct with a minor and his 2015 conviction for carrying a concealed weapon. LaFraniere was not aware of allegations that Garcia was involved in gang activities.

{¶ 16} Garcia testified in his defense and denied molesting Doe. He explained that the 2002 conviction stemmed from his premarital relationship with Doe's mother, and that the grandmother introduced the then 27-year-old Garcia to Doe's mother who was 14 years-old. Garcia denied knowing that her mother had been registered as a runaway at the time of the introduction.

{¶ 17} According to Garcia, the only time that he was alone with Doe was during the June 30, 2017 trip with LaFraniere to the Amish country and he had cell phone photographs of the trip showing that Doe was enjoying herself. Garcia also challenged the accuracy of the home security video indicating that he picked Doe up at her grandmother's house on July 17, 2017. He did not deny that Doe had been to

his residence or automotive garage during 2017 and admitted to ownership of the cameras recovered during the warrant search, including a silver one.

{¶ 18} Garcia was at home on October 7, 2017, when grandmother and Doe contacted her mother about the assault allegations. He also said that grandmother placed several calls to Doe's mother asking her to search for the photographs of Doe.

{¶ 19} At the close of the state's case, Garcia moved for judgment of acquittal of all charges pursuant to Crim.R 29. The trial court ruled that the motion was "unopposed and granted with regard to Count 6" and overruled for "Counts 1-5 and 7-10." Journal entry No. 102818155 (Mar. 06, 2018). Garcia's renewed Crim.R. 29 motion was overruled.

{¶ 20} The counts were renumbered due to the dismissal of Count 6. The state's unopposed motion to dismiss the "furthermore" clauses for the "resulting in serious physical harm" portions of Counts 5 and 9 (formerly Count 10)" were granted. *Id.* As a result, one of the sexually violent predator specifications was removed.

{¶ 21} Garcia was convicted of:

Rape, R.C. 2907.02 (A)(2), a first-degree felony with a sexually violent predator specification as charged in Count 1 of the indictment;

Gross sexual imposition, R.C. 2907.05(A)(1), a fourth-degree felony with a sexually violent predator specification as charged in Counts 2 and 6 (formerly Count 7) of the indictment;

Kidnapping, R.C. 2905.01(A)(4), a first-degree felony with a sexual motivation specification, and a sexually violent predator specification as charged in Counts 3 and 7 (formerly Count 8) of the indictment;

Endangering children, R.C. 2919.22 (B)(1), a first-degree misdemeanor as amended in Counts 5 and 9 (formerly Count 10) of the indictment (minus the furthermore clause(s) dismissed by the state); and

Illegal use of a minor in nudity-oriented material or performance, R.C. 2907.323(A)(1), a second-degree felony as charged in Count 8 (formerly Count 9) of the indictment.

Journal entry No. 102952867 (Mar. 8, 2018). The jury returned a verdict of not guilty of illegal use of a minor in nudity-oriented material or performance, R.C. 2907.323(A)(1) as charged in Count 4 of the indictment.

{¶ 22} Garcia was sentenced to life with parole eligibility after 20 years and adjudged to be a Tier I, II, and III registered sex offender. The instant appeal followed.

## II.   Assignments of Error

{¶ 23} Garcia poses five assigned errors for analysis.

I.      The evidence was insufficient to support appellant's convictions for rape, kidnapping, gross sexual imposition and illegal use of a minor in nudity-oriented material or performance.

II.     Appellant was denied effective assistance of counsel due to the cumulative effect of defense counsel's errors during the pretrial phase, the trials on the underlying charges and sexually violent predator specifications, and the sentencing hearing.

III.    The trial court erred in sentencing appellant to consecutive prison terms because the statutory requirements for imposing consecutive service were not present in the record.

IV.     The trial court erred in ordering appellant to pay the maximum $20,000 fine without determining his ability to pay and because the record demonstrates that appellant is indigent.

V.      The trial court erred in ordering appellant to pay the costs of prosecution in its sentencing order due to the court's failure to

advise him that he is liable for court costs at the sentencing hearing.

## III. Missing Evidence

{¶ 24} On appeal, the transcript, jury charge, and jury questions were filed with this court. The transcript index states that any exhibits that did not accompany the transcript were retained by the state. After a series of informal requests to the state, this court sua sponte issued an order for exhibits that were missing from the record.

> Sua sponte and pursuant to App.R. 9(E), the appellee Cuyahoga County Prosecutor is ordered to deliver to the clerk of the Eighth District Court of Appeals, under seal, the following exhibits that were admitted into evidence in the underlying criminal case of *State v. Garcia*, Cuyahoga C.P. No. CR-17-662561: (1) state's exhibit Nos. 1 thru 23 (search warrant and photographs); (2) state's exhibit Nos. 40 thru 48 (surveillance videos); (3) exhibit Nos. 49 thru 50 (search warrant inventories); (4) exhibit Nos. 51 thru 57 (cameras and SD cards); and (5) exhibit No. 60 (journal entry of defendant's prior conviction). All of the aforesaid exhibits shall be delivered to the clerk of the Eighth District Court of Appeal, under seal, by May 31, 2019.

{¶ 25} This court granted an extension of time at the state's request, and on June 17, 2019, the state filed a notice of submission and delivered exhibit Nos. 40-48 (surveillance videos); exhibit Nos. 51, 52, and 53 (Nikon camera, Olympus camera and Kodak camera); exhibit No. 54 (Nikon camera box and receipt); exhibit No. 55 (envelope containing 4 SD cards); exhibit No. 56 (an SD card adaptor); and exhibit No. 57 (a USD card reader). This court already had on file exhibit Nos. 49 and 50 (search warrant inventory lists), and exhibit No. 60 (the journal entry of Garcia's prior conviction).

{¶ 26} The state explained that it was unable to locate exhibit Nos. 1-23 (search warrants and photographs) and listed the efforts that were made to obtain the exhibits. "The state has exhausted all efforts to date and has not located" the exhibits. Notice of Submission, p. 2.

{¶ 27} The state then argued that the burden is on Garcia to provide the requisite record for review.

> The burden is on [a]ppellant to provide the Court with the necessary transcript for appellate review. *State v. Cross*, 8th Dist. Cuyahoga No. 58646, 1991 Ohio App. LEXIS 2752, *4, 1991 WL 106040 (June 13, 1991). "This is necessarily so because an appellant bears the burden of showing error by reference to matters in the record." *Knapp v. Edwards Laboratories*, 61 Ohio St. 2d 197, 199, 400 N.E.2d 384, 385 (1980).
>
> Under App.R.9(B), this duty includes the obligation to order a transcript of any proceedings [a]ppellant considers necessary for inclusion in the record and to ensure that the transcript of the proceedings required by App.R.9(B) is filed with the clerk of the trial court under App.R. 10(A).

Notice of Submission, p. 3.

{¶ 28} Finally, the state concluded that, due to Garcia's failure to provide a complete trial record that includes the "items necessary to the resolution of the assigned errors, the reviewing 'court has no choice but to presume the validity of the lower court's proceedings, and affirm.'" Notice of Submission, p. 3, quoting *Knapp v. Edwards Laboratories,* 61 Ohio St. 197, 199, 400 N.E.2d 384 (1980).

{¶ 29} On September 30, 2019, this court issued a second sua sponte order that requested, in pertinent part, that the parties brief the following issue:

This court sua sponte ordered the state to submit for the record exhibits that were admitted into evidence during trial, were returned to the state after trial, but are missing from the record, * * *

Under App.R. 9(B) and 9(B)(4), the burden is on a criminal defendant to provide a complete record that includes all evidence relevant to an assignment of error that challenges the sufficiency or manifest weight of the evidence. A criminal defendant may be entitled to a new trial where the failure to provide a complete record is not the fault of the defendant. *State v. Jones*, 71 Ohio St.3d 293, 297, 643 N.E.2d 547 (1994); *Knapp v. Edwards Laboratories*, 61 Ohio St. 197, 199, 400 N.E.2d 384 (1980).

Where the state has conceded that it has exhausted all efforts to recover the evidence and the rules require that the evidence relevant to challenges of sufficiency and manifest weight of the evidence are included in the record what, if any, is the scope of this court's inquiry?

{¶ 30} Condensed, Garcia responded that the case should be remanded to the trial court to determine whether Garcia was substantially responsible for the missing evidence pursuant to *Jones*, *Knapp*, and *State v. Tiedjen*, 8th Dist. Cuyahoga No. 106794, 2019-Ohio-2430 (case remanded to determine whether defendant was substantially responsible for the missing photographic exhibits). If the trial court were to find that Garcia is not responsible, Garcia requested that the trial court vacate the convictions or grant a new trial.

{¶ 31} Distilled, the state's argument cites *Tiedjen* for the proposition that this court's focus should be on whether the missing evidence is material to the case. It also advises, in contrast with the state's prior representation that the exhibits could not be located, that it "has digital, full color copies of all twenty-three Search Warrant photographs, which depict the original photographs in detail" and that the digital photographs were produced to Garcia during discovery.

{¶ 32} The state further says that "if this Court finds the photographs material to resolution of the appeal, the appropriate action would be to instruct the parties to supplement the record pursuant to App.R. 9." In addition, the state offers that this court has enough evidence to determine the issues on appeal. We remind the state that the determination of the materiality, weight, and sufficiency of the evidence on appeal is within the authority of this court and is not the state's determination. *See, e.g.,* Article IV, Section 3(B)(3) of the Ohio Constitution; *State v. Jenks*, 61 Ohio St.3d 259, 574 N.E.2d 492 (1991).

{¶ 33} As the state has suggested was indeed Garcia's duty, at the time that Garcia filed this appeal, he instructed the office of the clerk to prepare and submit the papers, exhibits, and transcript pursuant to App.R. 9(B). That rule provides, in part, "it is the obligation of the appellant to ensure that the proceedings the appellant considers necessary for inclusion in the record" are submitted on appeal and to "include in the record a transcript of proceedings that includes all evidence relevant" to an assignment of error that challenges the sufficiency or manifest weight of the evidence. App.R. 9(B) and 9(B)(4).[1]

{¶ 34} It is true that a "criminal defendant must suffer the consequences of nonproduction of an appellate record where such nonproduction is caused by his or

---

[1] The state also cites App.R. 10(A) regarding an appellant's duty to request the record under App.R. 9(B). The last sentence of App.R. 10(A) states that once an appellant has made reasonable arrangements to enable transmission of the record, appellant is not responsible for the failure to transmit.

her own actions." *Jones*, 71 Ohio St.3d at 297, 643 N.E.2d 547. However, where an appellant is not the cause of the failure to produce a complete appellate record,

> [the] absence of the record may require reversal of the underlying conviction and the grant of a new trial." [*State v.*] *Jones*, 71 Ohio St.3d 293, 297, [643 N.E.2d 547 (1994)]. *See also Knapp v. Edwards Laboratories*, 61 Ohio St.2d 197, 400 N.E.2d 384 (1980) (a new trial may be granted if it is determined, after an evidentiary hearing, that the record is incomplete and the moving party is not at fault); *State v. Polk,* 8th Dist. Cuyahoga No. 57511, 1991 Ohio App. LEXIS 900 (Mar. 7, 1991) (granting a new trial when the transcript was unavailable through no fault of the parties).

*Tiedjen,* 8th Dist. Cuyahoga No. 106794, 2019-Ohio-2430, ¶ 21.

{¶ 35} *Tiedjen* involved a defendant's motion for a new trial based on newly discovered photographic evidence that was missing from the appellate record. This court determined that "[w]hile a trial court record need not be perfect for appellate review, we must balance adequacy of the record with the deprivation of a defendant's due process rights." *Id.* at ¶ 15, citing *State v. Skatzes*, 104 Ohio St.3d 195, 2004-Ohio-6391, 819 N.E.2d 215, ¶ 161.[2] This court also determined that attempted compliance with App. 9(C) that allows an appellant to compile a statement of the proceedings where no transcript is available was futile because whether the photographs were missing is not in issue.

---

[2] We distinguished the holding in *Skatzes,* a capital punishment case that determined that the missing charts employed by the prosecution during voir dire to advise prospective jurors of the capital trial process did not constitute a failure to preserve evidence for appeal because the charts were not exhibits introduced at trial. *Tiedjen* at ¶ 16, citing *Skatzes* at ¶ 160 and 163. The missing exhibits in the instant case reflect the search warrant photographs and were admitted into evidence.

{¶ 36} The trial court's judgment denying the motion was vacated, and the case was remanded

> for either: (1) an evidentiary hearing based on *State v. Jones*, 71 Ohio St.3d 293, 643 N.E.2d 547 (1994), to determine whether Tiedjen is substantially responsible for the missing evidence if the evidence is, in fact, still missing; or (2) a full hearing on Tiedjen's motion for a new trial if the evidence is located.

*Tiedjen* at ¶ 2.

{¶ 37} Pursuant to App.R. 9(E), this court ordered the state to submit the omitted exhibits that the record reflects were delivered to the state. The state responded with the Notice of Submission listing the efforts made to obtain the exhibits, that it had exhausted all efforts to secure them, and that it is up to Garcia to provide them. Notwithstanding this court's order, the state now advises this court that the state can, in fact, replicate the exhibits from the digital records, information omitted from the Notice of Submission.

{¶ 38} Employing the fact as a shield and a sword, the state also shares that the digital records were provided to Garcia during discovery. However, the state says that it created the exhibits from the digital record and introduced them into evidence. According to the transcript, the exhibits were returned to the state after the trial. Further to the issue of Garcia's responsibility in this situation, the appellate docket indicated that the transcript and envelope of exhibits were filed with the appellate court. The Ohio Supreme Court

> rejected the notion that an appellant has the duty to supervise the actions of a trial court clerk to ensure the proper transmission of the record. This court held that placing that duty on an appellant "'would

render meaningless the duty imposed upon the clerk, by App.R. 10(B), to transmit the record to the Court of Appeals.'"

*In re Holmes*, 104 Ohio St.3d 664, 2004-Ohio-7109, 821 N.E.2d 568, ¶ 17, quoting

*Cobb v. Cobb*, 62 Ohio St.2d 124, 125, 403 N.E.2d 991 (1980).

{¶ 39} Typically, pursuant to *Tiedjen*, *Jones*, and *Knapp*, we would reverse the conviction and remand the case to the trial court to determine whether Garcia is "substantially responsible" for the inability to produce a complete record in light of the missing exhibits. *Tiedjen,* 8th Dist. Cuyahoga No. 106794, 2019-Ohio-2430, at ¶ 28. We would advise the trial court that if Garcia is determined to be substantially responsible, "his appeal should proceed only on such record as the trial court can settle, or on only those issues for which a [complete] factual record is unnecessary." *Id.*

{¶ 40} We would further inform the trial court that if Garcia is not substantially responsible for the incomplete record, a new trial would be in order:

> App.R. 9 does not explicitly provide the appellate court with the authority to grant a new trial. However, *per Knapp v. Edwards Laboratories*, *supra*, an appellant is entitled to a new trial where, after an evidentiary hearing, a record cannot be settled and it is determined that the appellant is not at fault. *See also State v. Polk*, [8th Dist.] Cuyahoga No. 57511, 1991 Ohio App. LEXIS 900 (Mar. 7, 1991).

*Jones*, 71 Ohio St.3d at 298, 643 N.E.2d 547.

{¶ 41} However, this case poses a distinct set of facts. Exhibits 1-23 consists of photographs introduced during the testimony of Doe and Det. McNeely. The exhibits were also displayed on the computer screen for the jury.

{¶ 42} Doe described several of the exhibits that contained photographs of the parent's home, brother's bedroom, and various areas of the automotive garage where the second assault allegedly occurred. Det. McNeely addressed Exhibits 1-23 as photographs taken of areas of the parents' home and the automotive garage during execution of the search warrants and photographs of cameras and SD storage cards that were reportedly among those that were confiscated as evidence.

{¶ 43} There is no evidence in the record or before this court of any wrongdoing on the part of Garcia for the failure to provide a complete record. *Tiedjen,* 8th Dist. Cuyahoga No. 106794, 2019-Ohio-2430, at 28.[3] According to the trial transcript, the trial exhibits admitted in the case were in the state's possession. The state concedes in the Notice of Submission that the exhibits are necessary for Garcia to address the assigned errors, and further that it has exhausted all efforts to locate the evidence. The grounds "for reversal only arise 'after all reasonable solutions are exhausted.'" *State v. Keeney*, 4th Dist. Lawrence No. 08CA36, 2009-Ohio-3094, ¶ 21, quoting *State v. Jones*, 71 Ohio St.3d 293, 298, 643 N.E.2d 547 (1994). Thus, an evidentiary hearing is not required.

{¶ 44} We reverse the judgment and remand the case for a new trial.

---

[3] In *Tiedjen,* we elected to address the assigned errors "in part should the missing evidence be located on remand." *Id.* at ¶ 22. Since recovery of the evidence is not in issue here and the case has been remanded for a new trial, we decline to address the assigned errors.

## IV. Conclusion

{¶ 45} Judgment is reversed, and the case remanded for proceedings consistent with this opinion.

It is ordered that appellant recover from appellee costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue of this court directing the common pleas court to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____

JUDGE ANITA LASTER MAYS

MARY EILEEN KILBANE, A.J., and
KATHLEEN ANN KEOUGH, J., CONCUR